Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiff
KERRY GOLDSTEIN

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KERRY GOLDSTEIN, an Individual,<br><br>                              Plaintiff,<br><br>v.<br><br>CENTENE CORPORATION, A Public Corporation, and DOES 1 THROUGH 50, Inclusive,<br><br>                              Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a), AND AIDING AND ABETTING RELIGIOUS DISCRIMINATION [ORS 659A.030(1)(g)]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff KERRY GOLDSTEIN hereby alleges as follows:

## PARTIES

1.      Plaintiff is, and at all times herein was, employed by Defendant CENTENE CORPORATION ("CENTENE").

2.      Plaintiff KERRY GOLDSTEIN started his employment with Defendant on March, 27, 2017 as a Project Manager III and then became a Manager, Special Projects in June 2018.  In the latter position, Plaintiff oversaw all

stages and types of departmental initiatives in support of business projects from identification and proposal creation to definition of requirements, project planning, estimating, execution, measurement, and implementation.

3.      Plaintiff also is, and at all times herein was, a deeply religious individual who sought from CENTENE a religious exemption from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19.  CENTENE not only denied Plaintiff's religious exemption request and thus failed to accommodate Plaintiff, CENTENE also took discriminatory action against Plaintiff because of his religious beliefs by terminating his employment with Defendant.

4.      CENTENE fired Plaintiff on February 4, 2022, for declining to receive the COVID-19 vaccine due to his sincerely held religious beliefs.

5.      Defendant CENTENE is, and at all times herein was, a publicly traded corporation headquartered in St. Louis, MO with operations all across the United States, including Plaintiff's office in Tigard, Oregon.  CENTENE is, and at all times herein was, an employer within the definition of 42 U.S.C. § 2000e(b).

6.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sue Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged.  Plaintiff will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## <u>JURISDICTION</u>

7.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

8.    This Court has jurisdiction over Defendant CENTENE pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the laws of the United States.

## VENUE

9.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

10.    Venue is proper in the Court's Portland Division because Defendant CENTENE's relevant office is in Washington County, the events giving rise to this Complaint occurred in Washington County, and all agents, employees, or other persons working for or in concert with CENTENE regarding the events giving rise to this case are located in, employed in, and/or residents of Washington County.

## GENERAL ALLEGATIONS

11.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

12.    In August 2021, approximately 18 months after the first-known cases of COVID-19 were discovered in Oregon, pursuant to an executive order from then-Oregon Governor Kate Brown, the Oregon Health Authority ("OHA") sought to limit the spread of COVID-19 in the state's healthcare facilities by issuing an executive order (the "Vaccine Mandate" or the "Mandate") requiring healthcare workers statewide to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010(1).  However, the OHA's Mandate allowed healthcare workers to seek, and the healthcare providers who employed them to grant, exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

13.    The OHA's Vaccine Mandate also made clear that the Mandate did not prohibit healthcare employers from complying with the requirements of federal and state laws that prohibit employers from discriminating against employees on the basis of religion.  *See* Or. Admin. R. 333-019-1010(5)(a).

14.     CENTENE is a St. Louis, Missouri-based corporation devoted to providing healthcare plans.

15.     In accordance with the OHA's Mandate, CENTENE required its employees to be vaccinated against COVID-19 or submit an exception request.  As Plaintiff was not a Senior Director or above, or a member-facing or in-home/clinical employee, his deadline to provide proof of vaccination was December 31, 2021.  Failure to do so would result in his last day of employment being January 27, 2022, and termination being effective February 4, 2022.

16.     CENTENE allowed its employees to seek religious exemptions by filling out and submitting an OHA COVID-19 Vaccine Religious Exception Request Form and/or an internal form that would be reviewed by CENTENE's HR WAT.

17.     Plaintiff, a deeply religious individual with strong convictions align strongly with, or are at least substantially similar to, tenets of Judaism, worked for CENTENE for approximately one year as a Project Manager and then approximately four years as Manager, Special Projects.

18.     Plaintiff was qualified for his position and had an exemplary employment record. In his 2021 Performance Evaluation, his manager, Kim Duerst ("Duerst"), had high praise for both his demeanor and effectiveness in the workplace and rated him as Meet or Exceeds Expectations in all categories.

19.     In a September 28, 2021 company e-mail that Plaintiff received, a video was included that targeted unvaccinated individuals by explaining how "unvaccinated individuals serve as a host for COVID-19."  *See* Attached **Exhibit "A"** [a true and accurate copy of the e-mail containing the relevant video].

20.     On or about October 8, 2021, Plaintiff completed and submitted to CENTENE religious exemption request form, a true and accurate copy of which is

attached hereto as **Exhibit "B."**  CENTENE received Plaintiff's form on or about October 12, 2021.

21.    On the request form, which was created by CENTENE, Plaintiff indicated that his job duties do not "include working in the field where [he visits] a member in their home and/or a healthcare facility" or "require out of town business travel."  *See* Ex. "B."

22.    CENTENE assured Plaintiff on this same form that "no single factor … determines whether someone's religious beliefs require recognition and accommodation under applicable federal/state law" and asked Plaintiff to provide complete and detailed responses.  *See* Ex. "B."

23.    Plaintiff provided CENTENE his personal statement about his religious beliefs and practices, and the specific aspects that form his objection to receiving the COVID-19 vaccine, in a document he attached to the form due to a lack of sufficient space on the form.  *See* Ex. "B."

24.    In his request, Plaintiff described his religious beliefs and practice as often "informed and guided by Jewish concepts or adopted and tailored from other religions or systems."  *See* Ex. "B."  Plaintiff asserted that his beliefs are "constantly evolving forward similar to Tshuva (Judaism) as representative of a process for personal correction."  *Id.*  Plaintiff also cites to multiple Jewish scriptures and other writings that serve as the basis for his position.

25.    Plaintiff clarified that his beliefs do not prohibit him from accepting all vaccinations, but specifically the products in the Pfizer, Moderna, or Johnson & Johnson, which therefore made him unable to take any of the COVID-19 vaccinations then available in the United States without violating his sincerely held religious beliefs.  *See* Ex. "B."

26.    The sincerely held religious beliefs applicable to this request are that Plaintiff must maintain and protect his body while taking caution in what he

exposes himself to and guard himself against harm because his "G-d given body and mind are used to both connect back to G-d but also to perform mitzvot and repair the world."[1]  *See* Ex. "B."

27.    This applies to whether Plaintiff should receive the COVID-19 vaccination because he must determine whether doing so would cause more harm than good to his body. Failing to properly consider this issue and weigh the benefits and drawbacks for himself would violate the principle of being cautious of what he exposes his body to and protecting himself against harm.

28.    Plaintiff stated that "[d]ue to the known harms, suspect harms, risks and unknown short and long term benefit," he is "unable to willfully expose [himself] to the current COVID 19 vaccination products available."  *See* Ex. "B." Doing so would go against his sincerely held religious beliefs.  *Id.*

29.    Attempting to further explain his sincerely held religious beliefs and what information he used to conclude what harm he would be exposing his body to with the COVID-19 vaccine, Plaintiff included references in his request for CENTENE to review.  *See* Ex. "B."

30.    Plaintiff also offered to provide additional applicable information about his beliefs to CENTENE upon request.  *See* Ex. "B."

31.    Because of CENTENE's expansion of remote flexibility through March 2022, Plaintiff stated that remote work would be a reasonable accommodation for CENTENE to grant.  *See* Ex. "B."

32.    In addition, Plaintiff stated that he would be willing to take a rapid test for any rare occasion he would be in the office setting or interact with another employee as well as continuing to adapt reasonable accommodations.  *See* Ex. "B."

33.    On November 18, 2021, Plaintiff was informed via e-mail by CENTENE's Workplace Accommodation Team (the "WAT") that his request for

---

[1] Some conservative or Orthodox Jews hold God's name in such high esteem that they cannot expose it to potential erasure or defilement – hence, they insert a dash where the "o" typically goes.

accommodation based on his sincerely held religious beliefs had been denied. CENTENE alleged that the majority of his stated views are "non-religious beliefs" and that philosophical, social, political, health concerns and/or personal preference are not protected by law or a basis for a religious accommodation." *See* Attached **Exhibit "C"** [a true and accurate copy of an e-mail thread concerning CENTENE's denial of Plaintiff's religious exception request].

34.    Also on November 18, 2021, Plaintiff responded to the denial e-mail seeking clarification as to which beliefs were construed as non-religious so he could address CENTENE's concerns.  *See* Ex. "C."

35.    Andrea L. Carlson-Kerr ("Carlson-Kerr"), CENTENE's Senior HR Business Partner, responded to Plaintiff via e-mail on November 18, 2021 that his response would be routed correctly to his ticket and also informed him that he could request an appeal and/or submit additional information.  *See* Ex. "C."

36.    Plaintiff responded to Carlson-Kerr's e-mail explaining his previous issues relying solely on Service Now, asking for confirmation his e-mails were being received, and expressing his concerns that CENTENE's interpretation of his religious beliefs as non-religious is harassing and insulting and were causing him to question CENTENE's expressed commitment to inclusivity. *See* Ex. "C."

37.    On November 19, 2021, Plaintiff received confirmation from Victoria Mann, CENTENE's Local HR Business Person, that his appeal had been received and would be considered.  *See* Ex. "C."

38.    On November 23, 2021, the WAT told Plaintiff it determined that his "religious belief/practice/observance does not rise to level of a sincerely held religious belief warranting exemption from the COVID-19 vaccination requirement."  *See* Ex. "C."

39.    Plaintiff responded to this e-mail asking where his request lacked clarity so that he could provide more detailed information and tried to establish

why the WAT had deemed his religious beliefs unworthy of accommodation – or, for that matter, not religious at all. *See* Ex. "C."

40.    After not hearing any response to his last e-mail, Plaintiff sent out another e-mail on December 1, 2021, asking about the review process, the appeal process, and requesting transparency in his accommodation request process as his accommodation request is quite reasonable, yet no one will discuss with him the reason it is being denied. *See* Ex. "C."

41.    On December 2, 2021, Plaintiff received a response from the WAT which told him to respond with his appeal by December 6, 2021. *See* Ex. "C."

42.    Plaintiff responded on December 2, 2021 by submitting his appeal. *See* Ex. "C." In it, Plaintiff clarified how his stated beliefs are religious in nature and sincerely held. *Id.* Plaintiff also asked for clarification as to what objections the WAT had so he could directly address the objections. *Id.*

43.    In e-mails dated December 3, 2021 December 6, 2021, the WAT told Plaintiff that his e-mails were received, welcomed him to provide more information, and assured him that extra information would be reviewed. *See* Ex. "C." However, the WAT never answered any of the questions Plaintiff posed. *Id.*

44.    The December 6, 2021 e-mail from the WAT also extended the deadline for Plaintiff to submit an appeal to December 8, 2021. *See* Ex. "C."

45.    On December 8, 2021, Plaintiff again expressed his frustration at not being told where the WAT was taking issue with his exemption request's expression of sincerely held religious beliefs. *See* Ex. "C."

46.    Since he received no guidance from the WAT as to where its objections lay, Plaintiff explained the Hebrew terms which may be hindering the WAT's ability to properly identify his beliefs as religious in nature. *See* Ex. "C." He also explained in more depth the meaning and significance of his beliefs as well as how and where they connect to God and religion. *Id.*

47.    On December 16, 2021, Plaintiff was informed that his appeal, original request, supporting documents, and any new information Plaintiff submitted, and the original determination and analysis, were reviewed by HR Workplace Accommodations leadership and that the prior decision was upheld as the original determination was appropriate.  *See* Attached **Exhibit "D"** [a true and accurate copy of CENTENE's e-mail to Plaintiff informing him that his appeal had been denied].  The WAT also declared this determination final.  *Id.*

48.    Plaintiff was given the ultimatum to remain unvaccinated and be faced with disciplinary action (termination on February 4, 2022) or make immediate plans to receive the COVID-19 vaccination.  *See* Ex. "D."

49.    On January 5, 2022, Plaintiff was notified that he was "in violation of Centene's COVID-19 Vaccination Policy," that his last day was to be January 27, 2022, and he was to be terminated on February 4, 2022. *See* Attached **Exhibit "E"** [a true and accurate copy of the letter notifying Plaintiff of his firing].

50.    On February 27, 2022, CENTENE announced its expansion of workplace flexibility, offering employees the very option that Plaintiff had proposed as a reasonable accommodation – namely, the ability to work remotely.

51.    CENTENE later announced on October 10, 2022, eight months after terminating Plaintiff's employment, that based on CENTENE's enhanced flexibility and current COVID environment, CENTENE would no longer require proof of vaccination for COVID-19 as a condition of employment.

52.    Plaintiff also has a recording of a phone call from November 8, 2021, in which Raymond Kleeman  ("Kleeman"), CENTENE's Vice President of HR, strongly suggested that to receive an exemption for religious reasons was extremely rare and that an employee such as Plaintiff would have to demonstrate that he had never received a vaccine.  Kleeman made no allowance for the possibility that any of its employees:

    a.  Had received vaccines as a child but stopped as adults;

    b.  Held religious views concerning vaccines that had evolved since previously receiving vaccines as adults; and/or

    c.  Did not have religious objections to vaccines in general, but did have a religious objection to COVID-19 vaccines.

53.    Due to CENTENE's termination of his employment and difficulty in obtaining comparable employment with another employer, Plaintiff has suffered the following monetary damages:

    a.  Loss of monthly salary of $24,000;

    b.  Retirement plan of $1,400 per month; and

    c.  Accrued vacation time.

54.    Due to CENTENE's termination of his employment and difficulty in obtaining comparable employment with another employer, Plaintiff has suffered the following nonmonetary damages:

    a.  Distress at being denied a religious accommodation and pressured into vaccination;

    b.  Distress at feeling like the accommodation process was inaccurate and disingenuous;

    c.  Distress at being told by a professional that his religious beliefs are either insincere or not religious; and

    d.  Worry about and loss of sleep over losing his employment over the course of months as Plaintiff attempted to obtain a religious accommodation from CENTENE.

55.    As a condition of filing the herein lawsuit, Plaintiff has obtained a right-to-sue letter from Oregon's Bureau of Labor & Industries.  That letter is attached hereto as **Exhibit "F."**

56.     Attached hereto as **Exhibit "G"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in each right-to-sue letter is set to expire.  Plaintiff  included this printout to show that he timely filed this lawsuit in compliance with the deadline set forth in his letter.

<u>**FIRST CAUSE OF ACTION:**</u>
**Violation of Title VII**
**[42 U.S.C. § 2000e-2]**
**Against Defendant CENTENE**

57.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

58.     Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

59.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

60.     Defendant CENTENE qualifies as an employer under Title VII.

61.     The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief …" 42 U.S.C. § 2000e(j).

62.     As a practicing religious practitioner, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

63.     Plaintiff has a bona fide religious belief that he cannot expose his body to harm and must guard it against anything that could harm it.  This includes receiving the COVID-19 vaccine because of its questionable benefits coupled with potential harm.  Doing otherwise interferes with Plaintiff's ability to connect with God and fulfill his purpose of performing mitzvot and repairing the world.

64.     Plaintiff's bona fide religious belief of guarding his body against potential harm conflicted with his employment-related duty to receive a COVID-19 vaccine in accordance with the OHA's Vaccine Mandate, as none of the COVID-19 vaccines available on the market in 2021 had sufficient data to ensure they would not cause harm to Plaintiff's body.

65.     Plaintiff informed his employer, Defendant CENTENE, of the conflict between his religious beliefs concerning the COVID-19 vaccine and his employment-related duty to receive a COVID-19 vaccine.  *See* Ex. "B."

66.     Defendant CENTENE subjected Plaintiff to discriminatory treatment by threatening to and then terminating his employment if he did not receive the COVID-19 vaccine.

67.     Defendant CENTENE made no attempt to accommodate Plaintiff's sincerely held religious beliefs, nor did CENTENE assert to Plaintiff that CENTENE would incur undue hardship by accommodating his beliefs. CENTENE simply attempted to justify its denial of Plaintiff's religious exemption request by claiming a "majority" of Plaintiff's religious objections to receiving the COVID-19 vaccine were "non-religious beliefs."  *See* Exs. "C" and "D."

68.     The Supreme Court has held that government entities "should not undertake to dissect religious beliefs … because [they] are not articulated with the clarity and precision that a more sophisticated person might employ."  *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 715 (1981) (*Thomas*). The Supreme Court has also declared that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."  *Id.* at 714.  That principle applies with equal force in Title VII cases.  *Bolden-Hardge v. Office of the Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023).

69.    The considerable body of information discussing risks and benefits of Plaintiff receiving the COVID-19 vaccine and referencing non-religious sources to support that discussion absolutely do not move Plaintiff's accommodation request from the religious to philosophical, social, political, health concerns and/or personal preference category.

70.    Defendant CENTENE's religious exception request form asked Plaintiff to, among other things, detail his beliefs, explain the specific aspects of his faith which form his objection to taking a COVID-19 vaccine, and provide information on how his religious beliefs guided his consideration of the COVID-19 vaccination and how they impact other aspects of his life.  *See* Ex. "B."

71.    Plaintiff did all of those things, and did so thoroughly.  *See* Ex. "B."

72.    Plaintiff determined, through careful research – which he presented to the WAT – that what he knew of the COVID-19 vaccinations made it impossible for him to receive it without violating his religious mandate to not expose his body to potential harm.

73.    Allowing harm to his body would have the unacceptable consequence of placing Plaintiff in violation of his sincerely held religious principles.

74.    Defendant CENTENE's assertion that the majority of Plaintiff's beliefs are non-religious shows either a careless interpretation of Plaintiff's explanations or a far too narrow interpretation of what is religious.

75.    Defendant CENTENE offered Plaintiff no religious accommodations even though reasonable accommodations were available which would have allowed Plaintiff to continue working while serving CENTENE's interest in significantly limiting the likelihood that its employees would contract and spread COVID-19 to CENTENE's other employees.

76.    Defendant CENTENE would have incurred no undue hardship by accommodating Plaintiff's religious beliefs.  Instead, Defendant CENTENE threatened to fire Plaintiff, then followed through on those threats.

77.    Animus toward Plaintiff's religious beliefs is truly what motivated Defendant CENTENE to fire Plaintiff:

      a. Before Plaintiff submitted his accommodation request, CENTENE had shown their animus towards people not vaccinated against COVID-19 calling them "hosts" for the virus.

      b. It was also known within CENTENE that it rarely allowed religious exemptions to the COVID-19 vaccination requirement and that their standard practically disqualified anyone who went to public school as they considered any previous vaccination as reason to deny exemption to this vaccine requirement.

78.    Defendant CENTENE never asserts that accommodating Plaintiff or any of the accommodations Plaintiff offers are unreasonable or create an undue hardship. On the contrary, Plaintiff was already working remotely, CENTENE was in the process of expanding their ability to accommodate flexible work locations, and within the same year Plaintiff's employment was terminated, CENTENE removed their vaccination requirements altogether.

79.    Attempting to comply with the OHA's Mandate is no excuse: The Mandate expressly allowed CENTENE to grant religious exemptions to its employees and made clear that the Mandate did not prohibit CENTENE from complying with Title VII.  See Or. Admin. R. 333-019-1010(3)-(5)(a).

80.    Based on the foregoing, Defendant CENTENE has discriminated against Plaintiff in violation of Title VII.

## SECOND CAUSE OF ACTION:
### Violation of State Law Prohibiting Religious Discrimination
### [ORS 659A.030(1)(a)]
### Against Defendant CENTENE

81.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

82.     Like Title VII, ORS 659A.030(1)(a) prohibits employers from discharging individuals from employment on the basis of religion.

83.     Because Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical [*see Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008)], Plaintiff declines to restate the facts as set forth in his first cause of action, as those facts are already incorporated as though fully set forth herein.

84.     Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiff, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

85.     Under Oregon law, a jury may award up to $500,000 in noneconomic damages.  *See* ORS 31.710(1).  Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … mental suffering, emotional distress, … inconvenience and interference with normal and usual activities apart from gainful employment."  ORS 31.705(2)(b)

86.     As stated *supra*, Plaintiff has endured mental suffering and emotional distress due to CENTENE's unlawful discrimination against her.

87.    ORS 659A.885(3) allows for punitive damages against employers such as Defendant CENTENE who violate ORS 659A.030(1)(a).  Oregon law places no cap on punitive damages.  *See Smith v. Ethicon, Inc.*, 2022 U.S. Dist. 98543 at *2 (D. Or. June 2, 2022).

88.    Based on the foregoing, in addition to violating Title VII, Defendant CENTENE has violated ORS 659A.030(1)(a).

### THIRD CAUSE OF ACTION:
### Aiding and Abetting Religious Discrimination
### [ORS 659A.030(1)(g)]
### Against Defendants DOES 1 THROUGH 50

89.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

90.    ORS 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

91.    In their roles as members of Defendant CENTENE's WAT, Defendants DOES 1 THROUGH 50 (the "DOES") – whose identities have yet to be determined, and whom Plaintiff intends to add as Defendants after learning their identities through discovery – acted in concert with, or gave substantial assistance to, CENTENE in unlawfully discriminating against Plaintiff on account of his religion.  The DOES did this knowing that it was unlawful for CENTENE, as Plaintiff's employer, to engage in religious discrimination against Plaintiff.

92.    Because Defendant CENTENE carried out its religious discrimination against Plaintiff with the assistance of the DOES, the Court should hold the DOES individually and personally liable for their conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants CENTENE and DOES 1 THROUGH 50 as follows:

**ON ALL CAUSES OF ACTION:**

1.      For economic damages in an amount according to proof at trial;

2.      For non-economic damages in an amount according to proof at trial;

3.      For punitive damages in an amount according to proof at trial;

4.      For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5.      For such other and further relief as the Court may deem proper.

Dated: May 24, 2023                    PACIFIC JUSTICE INSTITUTE

                                       __/s/ RAY D. HACKE_____
                                       Ray D. Hacke
                                       Attorney for Plaintiff
                                       KERRY GOLDSTEIN

# EXHIBIT "A"

September 28, 2021

This week, get a preview of Centene's upcoming employee engagement surveys, find details on the recently announced *Fresh Perspective on Flexibility*, and watch the playback of the *Real Talk* on Authentic Allyship if you missed the live event.



Our responsibility.

**Question of the week:** *How do unvaccinated individuals serve as a host for COVID-19?*

To understand the **impact of unvaccinated individuals spreading a virus compared to a vaccinated person,** watch this two-minute video with Dr. Mary Mason, SVP and Chief Medical Officer of Centene Health Initiatives. For additional details, explore the vaccine guide developed by the Centene Institute for Advanced Health Education, which can be found on the COVID-19 and CDC Resources page of *Working From Here*.



*Dr. Mary Mason discusses why unvaccinated individuals are at a much higher risk of becoming infected with COVID-19.*

Shaping

Great Place to

# EXHIBIT "B"



## Request for Religious COVID-19 Vaccination Exemption
### (For Employee Completion)

***Please download and complete this form.***

## <u>Statement on Employee Vaccination</u>

Because we are deeply committed to protecting the health and safety of our workforce, reducing the spread of COVID-19, and protecting the vulnerable populations we serve, Centene employees are required to provide proof of COVID-19 vaccination as a condition of employment. As a leading healthcare enterprise, we rely on scientific data and medical experts to make decisions that foster a healthy and safe working environment for our workforce and the members we serve. We know from these experts and our own experience that vaccinations are the safest, most effective, and most powerful tool we have to reduce the spread of COVID-19 and that the vaccines currently in use are the safest ever developed. Vaccination is a clear and proven way to protect each other from severe illness, hospitalization, and death.  Vaccination will also help us stop the Delta variant and prevent the next variant which could be far worse.

We understand that there may be individual situations that prohibit an employee from becoming vaccinated due to medical circumstances or religious beliefs.  Where such circumstances exist we will attempt to identify an accommodation that permits the employee to remain employed without being vaccinated.

**This form covers exemptions and accommodations related to Religious Beliefs.**

Please complete this form at least 8 weeks prior to your Return to In-Person Engagement date and submit it on the Request Central HR Vaccination Page. The HR Workplace Accommodation team will email you with any next steps. Full instructions for completing the form can be found below.



## Request for Religious COVID-19 Vaccination Exemption

(For Employee Completion)

### When to Request an Exemption

Requests are reviewed on a priority basis determined by your Return to In-Person Engagement date. Please submit your request **at least 8 weeks** prior to your Return to In-Person Engagement date to ensure a timely review process.

### Instructions to Submit the Completed Exemption Form to the HR Workplace Accommodations Team

Complete and save this form. Submit the completed form through Request Central as follows:

1. Go to the Request Central HR Vaccination Exemption page
2. Place your name in the "Requested For" field, if not automatically loaded
3. Select the type of vaccine exemption request form being submitted
4. In the "Description" field, indicate the type of vaccination exemption you seek and any other pertinent information
5. Select "Add Attachment" to upload your completed exemption form from a saved computer file
6. Submit

### Next Steps after Submission

The HR Workplace Accommodation Team will review your completed form and notify you by email from Service Now whether your stated religious beliefs exempt you from the vaccination requirement and what, if any, accommodation will be offered to you. Should additional information or a phone call be necessary to make a determination on your eligibility for an exemption and/or accommodation, you will be contacted.

### If Your Request is Approved

If your request for an exemption and accommodation is approved, you and your People Leader with both be notified. You and your People Leader should connect to determine what additional actions are needed to implement the approved accommodation(s).

### If Your Request is Denied

If your request for an exemption and/or accommodation is denied, you will be need to be fully vaccinated to continue your employment. Additional information as to timing and other requirements will be provided in connection with the denial.



# Request for Religious COVID-19 Vaccination Exemption
### (For Employee Completion)

Name: _____     Employee ID#: _____

Job Title: _____     LOB/Health Plan: _____

## Job Specific Information

1.  In what state do you live/work? _____

2.  Are you a candidate who has accepted a job offer, but has not yet started?   ☐ Yes   ☐ No
    If yes, provide your target Start Date and skip to Question 5. _____

3.  Prior to COVID-19, was your job remote (meaning that your primary work location was your home, not "field")? ☐ Yes   ☐ No

4.  What date has your People Leader communicated as your Return to In-Person Engagement date (which includes your return to field work date)? _____
    Note: Answer "n/a" if you have not yet been informed of your Return to In-Person Engagement date.

## Inquiry/Screening

5.  Have you received the COVID-19 vaccination? ☐ Yes   ☐ No

6.  Do your job duties include working in the field where you visit a member in their home and/or a healthcare facility? ☐ Yes   ☐ No
    If yes,
    - Please explain: _____
    - Frequency (for example, at least once a week): _____
    - Duration (for example, up to 1 hour for each visit): _____

7.  Upon Return to In-Person Engagement, do you expect your job duties require out of town business travel (excluding travel from site to site for "field" work addressed above? ☐ Yes   ☐ No
    If yes,
    - Please explain: _____
    - Mode (for example, air travel): _____

8.  Since the age of 18, have you received any vaccination(s), including flu shot(s)? ☐ Yes   ☐ No

9.  Since the age of 18, have you taken any over-the-counter or prescription medication? ☐ Yes   ☐ No



**Religious Belief(s)**

There is no single factor that determines whether someone's religious beliefs require recognition and accommodation under applicable federal and/or state law. Your responses to these questions will assist us in determining whether you will be exempt from the vaccination requirement so providing complete and detailed responses is important.

10. Provide a personal statement detailing the following:
    ➢ what religion you practice that forms the basis of your belief against vaccination
    ➢ the beliefs and practices of your religion
    ➢ how long you have embraced the beliefs/practices
    ➢ when, where and how often you participate in services or other observances
    ➢ other ways in which you practice your religion

11. Provide an explanation of the specific aspects of your religious belief(s), practice(s), or observance(s) that form(s) your objection to receiving a COVID-19 vaccine.

12. Provide information on how your religious beliefs guided your consideration of COVID-19 vaccination and how they impact other aspects of your life.

13. If you are in a member-facing role, please explain whether your religious beliefs prevent you from encouraging members to get vaccinated against COVID-19 and/or engaging in other preventative health measures.

14. Regardless of your role, please explain whether your religious beliefs prevent you from supporting the Company's commitment to improve the health of the community including the promotion of preventative health measures such as vaccinations.



**Reasonable Accommodation(s)**

If the information you submit meets the legal standards under applicable federal and/or state law to qualify for an exemption from the vaccination requirement, the next step is to determine whether there is a reasonable accommodation that will permit you to perform your role and/or remain employed. Please respond to the following questions to assist in that determination.  The determination of what, if any, accommodation you are offered will depend on a variety of factors.

15. Has your People Leader indicated when you and/or your team Returns to In-Person Engagement if you will be offered some form of flexible work arrangement where you will be able to work at home/remotely part of the time?   ☐Yes ☐No

16. Are you requesting to work from home full-time in lieu of being vaccinated? ☐Yes ☐No

17. What reasonable accommodation do you propose that will permit you to perform the essential functions of your role (or another role for which you are qualified with or without a reasonable accommodation), will protect the health and safety of our workforce, reduce the spread of COVID-19, and protect the vulnerable populations we serve?

18. If we cannot accommodate your request in your current role, are you willing to accept an unpaid leave of absence? ☐Yes   ☐No

**Documentation**

Please attach any applicable documentation in support of the answers provided above.

**Attestation**

By submitting this form, I attest to the following:

- My religious belief(s) and practice(s), which are the basis for my request for a religious accommodation, are sincerely held.
- All statements and information provided in support of my request are accurate and true. I have answered all questions fully and completely to the best of my ability and my responses represent my actual views and beliefs.
- I understand that any false or misleading statements made on this form or at any point in the COVID-19 vaccine exemption process may lead to disciplinary action, up to an including termination of my employment.
- If asked to provide additional information or documentation in support of my request for religious exemption and accommodation, I will cooperate with those requests fully and promptly, to the best of my abilities.



- If I am approved for an exemption from the vaccination requirement, I understand that the Company will attempt to provide an accommodation that permits me to perform my job or otherwise remain employed.  I further understand that I may not be offered my preferred accommodation and, consistent with applicable laws, the Company may not be able to provide an accommodation if doing so would create an undue hardship or otherwise fall outside the relevant standards for job protection.
- I understand that if I am not granted an exemption, and I decide not to become fully vaccinated, my employment will be terminated.
- I understand that if I am found to be eligible for an exemption but the Company is not able to provide an accommodation due to undue hardship, and I decide not to become fully vaccinated, my employment will be terminated.
- I understand that once granted, an accommodation remains subject to review and may be altered or discontinued if it does not effectively permit me to perform my job or if a change in business circumstances renders the accommodation unreasonable or unworkable.
- If my beliefs change or I receive information which would permit me to become fully vaccinated against COVID-19, I will inform my People Leader.
- I may withdraw my request for an exemption from the vaccination requirement at any time without being subject to disciplinary action or retaliation for doing so.


Employee Signature: _____    Date: _____

**What religion do you practice that forms the basis of your belief against vaccination?**
I have a practice including beliefs that help to connect me with G-d and provide support, moral training, character insight and reverence, along with a sense of connection to the creator. My beliefs are constantly evolving forward similar to Tshuva (Judaism) as representative of a process for personal correction. Many of my beliefs are individualized, unique and sincerely adopted to guide my moral and ethical decisions. The beliefs are often informed and guided by Jewish concepts or adopted and tailored from other religions or systems. Those beliefs do not form a general argument against vaccination. The beliefs form the basis of my objection to injection from the Pfizer, Moderna or J&J currently available Covid-19 products.

**Explain in detail why you are requesting this religious exemption and the religious principle(s) that guide your objection to vaccination.**
I am requesting the religious exemption because injection from any of the Pfizer, Moderna or J&J COVID19 products would go against my relationship with G-d and my religious beliefs.

The below Jewish concepts make up a part of my religious beliefs. The organized religion of Judaism does not make up the totality or complete direction of my religious beliefs but provides a significant foundation for my pathway towards my relationship with G-d.

The primary religious principles applicable to the request for exemption have to do with maintaining and protecting my body while taking caution in what I expose myself to that may do harm. In addition, I am obliged to guard myself against harm. My G-d given body and mind are used to both connect back to G-d but also to perform mitzvot and repair the world.

The benefit of the vaccine in both the long and short term for my demographic group are unknown due to the specificity of the antibodies produced, decreasing vaccine effectiveness at preventing infections (with booster risk of immune tolerance) hospitalizations and variants that are likely to escape the specificity of the antibodies. This is in addition, to an IFR for my age group being .031% (Axfors, 2021), with the CDC current best estimate scenario at .05% (Covid-19 Pandemic Planning Scenarios ,2021) and an overall risk of mortality currently being 2.8 per 1,000,000 (Agarwala et al., 2021). If I do end up being exposed to Covid-19 with different variants it is possible that mutations could make is less infectious or harmful and those rates could be even lower. What is known is that the immunity I would develop would be more robust and likely significantly longer lasting.

The current vaccines have known risks, short and potential long term harm and several unknowns regarding safety where more research is needed. The damages produced, particularly at the vascular level are likely irreversible. I am unable to allow an external entity to decide the parameters of my relationship with G-d and to have someone else make this significant decision for me. I am obliged to through sincere effort and review make this decision and not to allow any entity to supersede my relationship as if to put themselves before my relationship with G-d. More specifically the coercion applied to this medical treatment and supporting application of this coercion goes against myself as an individual but also what I believe is ethical for a society as part of a core issue of right and wrong and has significant downstream implications which are consequentially morally objectionable.

Due to the known harms, suspect harms, risks and unknown short and long term benefit I am unable to willfully expose myself to the current COVID 19 vaccination products available. To willfully expose myself

to the harms I would be going against my strong sincerely held religious beliefs that help guide my connection to the creator.

- See the additional relevant information section for more details on harms, risks, etc.

**Provide the basis of your sincerely held religious belief(s), practice(s), or observance(s) that form(s) your vaccination objection.**

| Primary principle of maintaining, protecting your body and taking caution in what you expose yourself to that may do harm. | Summary |
|---|---|
| **Mishneh Torah, Human Dispositions 4:1** <br> Seeing that the maintenance of the body in a healthy and sound condition is a God-chosen way, for, lo, it is impossible that one should understand or know aught of the divine knowledge concerning the Creator when he is sick, | Maintenance of the body is important |
| **Mishneh Torah, Human Dispositions 4:1** <br> it is necessary for man to distance himself from things which destroy the body, and accustom himself in things which are healthful and life-imparting. | Distance yourself from things that may harm |
| **Shulchan Arukh, Yoreh De'ah 116:1** <br> Exposed beverages were forbidden by the rabbis because they feared that snakes would have drunk from them, and left behind venom. | Caution in exposure that may do harm |
| **Dvarim 4:9** <br> Guard yourself and guard your soul very much <br><br> **Yalkut, Sifsei Chachomim Chumash, Metsudah Publications, 2009** <br> Guard Yourself means look after your physical body. | Guard against physical harm |
| **Maimonides, Mishneh Torah, Hilchot Deot 4:1** <br> Distance oneself from things that might damage one's body, and accustom oneself to a healthy lifestyle | Distance yourself from things that may harm |
| **Sefer HaChinuch, Mitzva 546, of putting a fence on one's roof** <br> Sefer HaChinuch (Spain, 13th century), it is our responsibility to guard against natural occurrences which may harm our bodies – not only things that can end a person's life but also things that can damage a person's body. | Distance yourself from things that may harm |
| **Shemot 20:1 & Dvarim 5:6** <br> You shall have no other gods beside Me. | Nothing should act as an intermediary between a direct connection with G-d |

| | |
|---|---|
| Rashbam on Dvarim suggests that the prohibition is not intended to suggest that Jews would consider such man made objects as being diving but rather they might be used as a form of establishing contact as opposed to a direct route<br><br>**Bereshit 32:29**<br>Jacob wrestling with an angel<br><br>**Shemot 7:1**<br>See I place you in the role of God to Pharaoh..<br>**Daat Zkenim**<br> Pharaoh had determined himself to be god of the Nile. | and no angel or leader should stand in the way of that direct connect either. |

**Any additional relevant information**
I am not aware of any research that was setup and specifically looked to examine the safety of the revised type spike protein used in the vaccines. The wild type and likely aspects of the spike protein are toxic even without binding to ACE2. The spike protein can lead to hypertension, stroke, increased cell growth (Suzuki and Gychka, 2021), impact on cardiac vascular pericytes (Avolio, 2020) inflammation (Buzhdygan et al., 2020), crosses the blood brain barrier, and has been found in the plasma and non-classical monocytes of vaccinated individuals (Ogata, 2021) (Yogendra, 2021).

In the past 6 months, the various vaccines have added Guillain Barre, thrombosis, myocarditis (increase by a factor of 3 (Barda et al., 2021)), Bell's palsy, and tinnitus to their list of adverse effects, and, most recently, nephrotic syndrome and glomerulonephritis are being investigated as possible complications as well. Reviewing the VAERS data base, one can see reports of (as of today) 12,366 deaths, 46,036 hospitalizations, 14,251 cases leading to permanent disability, and 12,194 life-threatening complications related to the vaccine. Majority of the submissions are from service workers (Mclachlan, 2021). Many researchers believe that the VAERS classically underreports and a conservative estimate of deaths may be around 150 thousand (Kostoff et al., 2021).

Vaccine deaths have been evaluated by Peter Schumacher who performed autopsies believed that around 30% performed for individuals who died shortly after vaccination were resulting from the vaccination. That was further validated by additional evaluators. Norway conducted a similar study finding that of 100 deaths reviewed around 36% were considered probable to possible.

The Pfizer vaccine has been shown to modulate immune response via impact on TLR4, TLR7 and TLR8. The short and long term implications have not been studied, but are very concerning. The authors indicated that the immune response to viral infection was reduced through TLR 7 and TLR8 but response to fungal infection was increased after vaccination via TLR4 (Fohse et al., 2021).

New data is suggesting that variants passing from vaccinated individuals may be more likely to infect other vaccinated individuals and less likely to infect unvaccinated individuals, and that those strains may be vaccine specific antibody resistant (Servellita et al., 2021), along with producing a similar viral load in vaccinated and unvaccinated individuals. We have also seen examples of highly vaccinated populations have significant (74%) of cases occurring in the fully vaccinated population (Brown et al., 2021). This

creates both societal and individual implications and is a very recent development that requires further study as new strains seem to have spike protein deletions which could help to evade our current Pfizer, J&J and Moderna vaccine strategies (Venkatakrishnan, et al., 2021).

Charles Hoff when measuring D-Dimer has noted that it can be significantly elevated days to months after vaccination. Peter McCullough has noted elevated Troponin levels after vaccination that can last for weeks or months.  Furthermore, in the original EUA filing, the vaccine companies planned to monitor safety/efficacy for two years (through 2023) to assure that these vaccines are truly safe and effective; so far, however, only 9 months have passed. I am not particularly sure that side effects can be fully tracked and researched in a few years, some aspects of the research could require necessitate a much longer time period (Seneff & Nigh, 2021).

**References**

A.F. Ogata, C.A. Cheng, M. Desjardins, Y. Senussi, A.C. Sherman, M. Powell, L. Novack, S. Von, X. Li, L.R. Baden, D.R. Walt Circulating SARS-CoV-2 vaccine antigen detected in the plasma of mRNA-1273 vaccine recipients Clin. Infect. Dis. (2021)

Agarwala, N., Jin, J., Kundu, P., & Zhang, Y. (n.d.). Covid 19 Risk Tool. Retrieved October 8, 2021, from https://covid19risktools.com/

Axfors, C., & Ioannidis, J.P. (2021, January 01). Infection fatality rate of COVID-19 in community-dwelling populations with emphasis on the elderly: An overview. Retrieved from https://www.medrxiv.org/content/10.1101/2021.07.08.21260210v1.full

Barda, N., Al., E., Author AffiliationsFrom the Clalit Research Institute, Lee, G., Others, W. Z., Others, G. L., . . . T. T. Shimabukuro and Others. (2021, September 16). Safety of the BNT162b2 mRNA Covid-19 Vaccine in a Nationwide Setting: NEJM. Retrieved from https://www.nejm.org/doi/full/10.1056/NEJMoa2110475

Brown CM, Vostok J, Johnson H, et al. Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021. MMWR Morb Mortal Wkly Rep 2021;70:1059-1062. DOI: http://dx.doi.org/10.15585/mmwr.mm7031e2

Buzhdygana, T. P., DeOrec, B. J., Baldwin-Leclair, A., Bullock, T. A., McGary, H. M.... Ramirez, S. H. (2020). The International Journal of Vaccine Theory, Practice, and Research2(1), May 10, 2021 Page | 70SARS-CoV-2 Spike Protein Alters Barrier Function in 2D Static and 3D Microfluidic in-Vitro Models

COVD-19 Pandemic Planning Scenarios. (2021, April 19). Centers for Disease Control and Prevention. https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html

Dr. Ram Yogendra Discusses Covid Long-Haul Management. (2021). YouTube. Retrieved October 4, 2021, from https://youtu.be/_hU1-6MrtP0

E. Avolio, M. Gamez, K. Gupta, R. Foster, I. Berger, M. Caputo, A. Davidson, D. Hill, P. Madeddu The SARS-CoV-2 Spike Protein Disrupts the Cooperative Function of Human Cardiac Pericytes - Endothelial

Cells Through CD147 Receptor-mediated Signalling: a Potential Non-infective Mechanism of COVID-19 Microvascular Disease bioRxiv, 2020.12.21.423721 (2020)

E.M. Rhea, A.F. Logsdon, K.M. Hansen, L.M. Williams, M.J. Reed, K.K. Baumann, S.J. Holden, J. Raber, W.A. Banks, M.A. Erickson The S1 protein of SARS-CoV-2 crosses the blood–brain barrier in mice Nat. Neurosci., 24 (2021), pp. 368-378

Föhse, F. K., Geckin, B., Overheul, G. J., Maat, J. V., Kilic, G., Bulut, O., . . . Netea, M. G. (2021, January 01). The BNT162b2 mRNA vaccine against SARS-CoV-2 reprograms both adaptive and innate immune responses. Retrieved from https://www.medrxiv.org/content/10.1101/2021.05.03.21256520v1

Mclachlan, Scott & Osman, Magda & Dube, Kudakwashe & Chiketero, Patience & Choi, Yvonne & Fenton, Norman. (2021). Analysis of COVID-19 vaccine deathreports from the Vaccine Adverse Events Reporting System (VAERS) Database Interim Results and Analysis. 10.13140/RG.2.2.26987.26402.

Patterson, B. K., Francisco, E. B., Yogendra, R., Long, E., Pise, A., Rodrigues, H., Hall, E., Herrara, M., Parikh, P., Guevara-Coto, J., Triche, T. J., Scott, P., Hekmati, S., Maglinte, D., Chang, X., Mora-Rodríguez, R. A., & Mora, J. (2021, January 1). Persistence of SARS COV-2 S1 protein in CD16+ monocytes in post-acute sequelae of covid-19 (PASC) up to 15 months Post-Infection. bioRxiv. Retrieved October 4, 2021, from https://www.biorxiv.org/content/10.1101/2021.06.25.449905v3.abstract.

Seneff, S., & Nigh, G. (2021). Worse Than the Disease? Reviewing Some Possible Unintended Consequences of the mRNA Vaccines Against COVID-19. International Journal of Vaccine Theory, Practice, and Research, 2(1), 38–79. Retrieved from https://ijvtpr.com/index.php/IJVTPR/article/view/23 (Original work published May 10, 2021)

Servellita, V., Morris, M.-K., Sotomayor-Gonzalez, A., Gliwa, A. S., Torres, E., Brazer, N., Zhou, A., Hernandez, K. T., Sankaran, M., Wang, B., Wong, D., Wang, C., Zhang, Y., Reyes, K. R., Glasner, D., Deng, X., Streithorst, J., Miller, S., Frias, E., … Chiu, C. Y. (2021, January 1). Predominance of antibody-resistant SARS-CoV-2 variants in vaccine breakthrough cases from the San Francisco Bay Area, California. medRxiv. Retrieved October 4, 2021, from https://www.medrxiv.org/content/10.1101/2021.08.19.21262139v1

Suzuki, Y. J. & Gychka, S. G. (2021). SARS-CoV-2 Spike Protein Elicits Cell Signaling in Human Host Cells: Implications for Possible Consequences of COVID-19 Vaccines. Vaccines 9: 36. https://doi.org/10.3390/vaccines9010036

Venkatakrishnan, A., Anand, P., Lenehan, P., Ghosh, P., Suratekar, R., Siroha, A., . . . Soundararajan, V. (2021, January 01). Antigenic minimalism of SARS-CoV-2 is linked to surges in COVID-19 community transmission and vaccine breakthrough infections. Retrieved from https://www.medrxiv.org/content/10.1101/2021.05.23.21257668v3

# EXHIBIT "C"

| | |
|---|---|
| **From:** | Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com> |
| **Sent:** | Friday, November 19, 2021 9:13 AM |
| **To:** | Kerry Goldstein |
| **Subject:** | FW: Religious Accommodation Determination - Kerry Goldstein (205299) |

**From:** Kerry Goldstein
**Sent:** Friday, November 19, 2021 9:11 AM
**To:** Victoria Mann <Victoria.Mann@centene.com>; Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>
**Cc:** Kim Duerst <kduerst@trilliumchp.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>
**Subject:** RE: Religious Accommodation Determination - Kerry Goldstein (205299)

Glad to know – thanks.
Do you know the name of the third party Centene contracted with to review the religious conflict disclosures?

**From:** Victoria Mann <Victoria.Mann@centene.com>
**Sent:** Friday, November 19, 2021 9:09 AM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>
**Cc:** Kim Duerst <kduerst@trilliumchp.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>
**Subject:** RE: Religious Accommodation Determination - Kerry Goldstein (205299)

Kerry,
I received direct confirmation from the team that they received your appeal. They stated that it will be reviewed next week.

Thanks.
Victoria

**From:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>
**Sent:** Friday, November 19, 2021 9:06 AM
**To:** Victoria Mann <Victoria.Mann@centene.com>; Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>
**Cc:** Kim Duerst <kduerst@trilliumchp.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>
**Subject:** RE: Religious Accommodation Determination - Kerry Goldstein (205299)

HR has closed the ticket. I really don't think they use that Service Now system.
I am glad we know that at least an individual received it to then open it back up or reply – I assume.

**From:** Kerry Goldstein
**Sent:** Friday, November 19, 2021 8:07 AM
**To:** Victoria Mann <Victoria.Mann@centene.com>; Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>
**Cc:** Kim Duerst <kduerst@trilliumchp.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>
**Subject:** RE: Religious Accommodation Determination - Kerry Goldstein (205299)

Thanks, much appreciated.

**From:** Victoria Mann <Victoria.Mann@centene.com>
**Sent:** Thursday, November 18, 2021 2:59 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Andrea L. Carlson-Kerr
<Andrea.L.CarlsonKerr@CENTENE.com>
**Cc:** Kim Duerst <kduerst@trilliumchp.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>
**Subject:** RE: Religious Accommodation Determination - Kerry Goldstein (205299)

Thanks Kerry. I forwarded your comments both to the service now ticket and to the team handling these requests
directly.

Victoria

**From:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>
**Sent:** Thursday, November 18, 2021 2:28 PM
**To:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>
**Cc:** Victoria Mann <Victoria.Mann@centene.com>; Kim Duerst <kduerst@trilliumchp.com>; Dawn M. Atkin
<Dawn.M.Atkin@TrilliumCHP.com>
**Subject:** RE: Religious Accommodation Determination - Kerry Goldstein (205299)

I have sent 2 messages to Service Now on this ticket and never received a reply (the first was 20 days ago).
Please if you can verify that an individual has received this message I would very much appreciate it.
The claim that what I provided was not religious in nature is both on the surface and at any interpretative and personal
level incorrect.
That is of course beyond what is a level of harassment or insult to claim that what is clearly expressed as personal deeply
held religious belief is in fact not religious goes beyond anything that I would think Centene and its commitment to equal
employment and inclusivity would stand behind.
Assistance in making sure this message is received by the appropriate party would be appreciated.

**From:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>
**Sent:** Thursday, November 18, 2021 2:15 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>
**Cc:** Victoria Mann <Victoria.Mann@centene.com>; Kim Duerst <kduerst@trilliumchp.com>; Dawn M. Atkin
<Dawn.M.Atkin@TrilliumCHP.com>
**Subject:** RE: Religious Accommodation Determination - Kerry Goldstein (205299)

Hi Kerry.  With you copying Service Now on this email, it should be routed to your ticket; however, to be sure, you can
go back to the initial Service Now denial and click on the ticket link to request an appeal and/or submit additional
information.

**Andrea Carlson-Kerr**
Senior HR Business Partner
Trillium Community Health Plan & Ohana Health Plan

Andrea.L.CarlsonKerr@Centene.com

## Ask HR

***Have HR questions? Ask HR has answers!*** **Contact us using one of the easy methods below:**

- **Max** — Available to chat 24/7, Max is Centene's new virtual assistant found on CNET and Request Central. Let
  Max help maximize your day.
- **1-833-GoAskHR** — Call 1-833-462-7547 weekdays from 7:30 a.m. – 7 p.m. CT

- **Request Central** — <u>Submit an HR request</u> any time

---

**From:** Kerry Goldstein <<u>Kerry.Goldstein@TrilliumCHP.com</u>>
**Sent:** Thursday, November 18, 2021 1:56 PM
**To:** ServiceNow <<u>cncservicenow@CENTENE.COM</u>>; Dawn M. Atkin <<u>Dawn.M.Atkin@TrilliumCHP.com</u>>; Kim Duerst
<<u>kduerst@trilliumchp.com</u>>
**Cc:** Andrea L. Carlson-Kerr <<u>Andrea.L.CarlsonKerr@CENTENE.com</u>>; Victoria Mann <<u>Victoria.Mann@centene.com</u>>
**Subject:** RE: Religious Accommodation Determination - Kerry Goldstein (205299)

Thanks, can you please provide a breakdown of the religious beliefs expressed and which ones you are considering to be non-religious.
I provided a significant number of clearly expressed religious beliefs along with supporting references and literature to validate how those religious stances impact with the COVID 19 vaccinations, the return documentation you provide may help to correct what appears to be a mis-read or interpretation of the information provided.

Victoria and Andrea can you forward this email to the appropriate agent as Service Now has not been an effective route of communication for me.

Thank you,

Kerry Goldstein

---

**From:** ServiceNow <<u>cncservicenow@CENTENE.COM</u>>
**Sent:** Thursday, November 18, 2021 1:50 PM
**To:** Kerry Goldstein <<u>Kerry.Goldstein@TrilliumCHP.com</u>>; Dawn M. Atkin <<u>Dawn.M.Atkin@TrilliumCHP.com</u>>; Kim Duerst <<u>kduerst@trilliumchp.com</u>>
**Cc:** Andrea L. Carlson-Kerr <<u>Andrea.L.CarlsonKerr@CENTENE.com</u>>; Victoria Mann <<u>Victoria.Mann@centene.com</u>>
**Subject:** Religious Accommodation Determination - Kerry Goldstein (205299)

Dear Kerry Goldstein,

Your religious accommodation request to be exempt from Centene's COVID-19 vaccination requirement has been reviewed, and a determination made as follows:

**Denial:  Does Not Meet Legal Standard**
- The information you submitted in support of your religious accommodation request <u>does not meet the legal standard</u>. The majority of your stated views <u>are non-religious beliefs</u> under applicable state and federal law that are essentially philosophical, social, political, health concerns and/or personal preference that are not protected by law or a basis for a religious accommodation.
- As a result, you are <u>not eligible</u> for a religious accommodation and your <u>vaccine exemption request is denied</u>.

**Action Required**
You have the following choices:
1. If you choose to remain unvaccinated, beyond the 12/31/2021 deadline communicated by the Company, you will be in violation of our vaccination policy which requires proof of full vaccination.
2. You are encouraged to <u>begin the vaccination process as soon as possible</u>, given that it may take 3-5 weeks from the date of the first COVID-19 vaccination shot to become fully vaccinated.

o   Should you choose to become vaccinated, you will be compensated for time taken off work to receive your vaccination(s).  <u>Please schedule time off with your People Leader</u> and account for this time using the "COVID-Vaccine" pay code.

## Application to Your Business Unit

Stay tuned for further updates and direction from your People Leader as your leadership team and HRBP continue to apply these timeframes specific to your health plan and business unit's operation.

## COVID-19 & Return to Office/Field Information

Visit Centene's robust online resources for employees on **CNET's Working From Here & COVID-19 Resource** web pages for information about the safety of COVID-19 vaccines, the importance of vaccination to public health, company-wide updates, helpful tools and details on our phased approach to returning to the office and field work with members.

Sincerely,

Workplace Accommodation Team

Ref:MSG4501599_imGjOxxAsKdTJnIKUCdH
This transmission (including any attachments) may contain confidential information, privileged material (including material protected by the solicitor-client or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.(*cd:20130808)

| | |
|---|---|
| **From:** | Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com> |
| **Sent:** | Tuesday, November 23, 2021 3:15 PM |
| **To:** | Kerry Goldstein; Danika Duren Goldstein |
| **Subject:** | FW: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299) |

**From:** Kerry Goldstein
**Sent:** Tuesday, November 23, 2021 3:11 PM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Thanks, given the reality of the sincerely held beliefs are also religious I am wondering where you found the documentation to be lacking so I can provide more clarity. I understand you are using documentation provided where I did my best to answer the original questions I was given.. My thought is since you are evaluating a human and not a document, we can engage in an inquiry so I can provide the details you may find to be lacking.

I would assume that at minimum we must be on the same page that the beliefs I listed are religious in nature, leading me to think you find doubt in the sincerity as to if I use those foundations to make decisions in my life in other contexts. If that is the limitation I can provide an extraordinarily long list of areas through which those beliefs impact.

If for some reason you are of the opinion that many of the (often Jewish) beliefs are not of a religious nature or I failed to draw a clear enough connection to how that guides my morality and connection to G-d then I can list that out in more detail.

If there is a third area here where I have failed to provide information that in your opinion goes into the legal framework for what is considered a Religious belief please let me know as it is this area which could be overlooked.

I attempted to provide an applicable foundation of my religious beliefs and how those interact with the world as it relates to the available COVID vaccines and mandate. Please let me know where I can provide more explanation.

Thanks,
Kerry Goldstein

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Tuesday, November 23, 2021 2:50 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Hi Kerry,

Thank you for reaching out. We have carefully evaluated all of the detailed information you provided to us in support of your religious exemption request to determine how your stated belief/practice/observance guided your COVID-19 vaccination decision and how you implement your stated belief/practice/observance in your daily life and decision making. This information was then used to determine whether there exists a sincerely held religious belief, as defined by federal and/or applicable state law, that warrants exemption from the Company's vaccination requirement. Based on the detailed information provided, we determined that the stated religious belief/practice/observance does not rise to level of a sincerely held religious belief warranting exemption from the COVID-19 vaccination. requirement.

Thank you,

Workplace Accommodation Team

Ref:MSG4656402_TFmtbLmYboGhHQmIOphk
This transmission (including any attachments) may contain confidential information, privileged material (including material protected by the solicitor-client or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.(*cd:20130808)

| | |
|---|---|
| **From:** | Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com> |
| **Sent:** | Wednesday, December 1, 2021 2:40 PM |
| **To:** | ServiceNow; Dawn M. Atkin; Kim Duerst |
| **Cc:** | Andrea L. Carlson-Kerr; Victoria Mann |
| **Subject:** | RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299) |
| **Attachments:** | Rexemption.docx |

I would like to please follow up on my previous note, having not received a reply.
I am wondering what the timeline here is regarding an appropriate reply and given the lack of clear and timely communication.

Additionally, I would like to discuss the following questions:

1) Does Centene review these internally or are they contracted to a third party? If so who?
2) Is there an audit process regarding how these are processed
3) What does an appeal process look like and is there one?
4) I would like to see my file, the accompanying documentation and any specific timestamps or comments on it regarding the review

I am finding this lacking both sincerity and transparency. In an effort to provide transparency I have attached my reasons (submitted 10/8) of my sincerely held religiously based objections. I have not been contacted, and have received only the ambiguous information without specific as to why this is denied, with no accompanying inquiry or clarification requested.
It is unclear if the denial is the result of suspected sincerity (although I think for those that know me in reading will find it matches with and explains many of my choices), deciding it is not meeting standard of religion or some other reason. All I know at this point is I have submitted information providing what I believe is to be the requested information to describe my religious objection. I have received a denied notice but there are only very specific reasons this can be denied. Those denial reasons have not been communicated, nor have I been given a route to provide additional information to describe my position or clarify a misunderstanding. My general assumption about how any process like this would take place is that the documentation is assumed to be sincere and any investigation must be carefully documented (which is why I am hoping request #4 can be helpful).

I am not requesting admission into some special program where my application is evaluated for acceptance. I am telling you about why I am unable to do what the company has requested because it conflicts with my protected religion. A denial is meaningless. You only have certain criteria to not reach a stage of looking for accommodation. Please communicate those reasons so we can address them.

**For everyone on this thread,** I would ask for your support in bringing transparency to this process, as I believe we are all called to do. I do not believe that just because a potential third party has provided an ambiguous comment regarding a denial it removes any obligation to ensure that a legal, moral and timely process proceeds. This process had brought to light some severe flaws within the system, and while I would like answers for myself I also see an opportunity to reduce liability that this communication represents for our broader team members and create a transparent, moral, and remove opportunities for potential harassment. I also want to clarify for anyone on this thread that what you are seeing here in this process is not the result of any mandate or company hardship, as that would be addressed in the accommodation stage of the request. Rather, you are seeing the result of some process or policy which is deliberately choosing this level of opaqueness and ambiguity to deny individuals beliefs,  practices, and religious observance, through claim of an undetermined reason. Furthermore if that reason is clearly communicated where is the step to

determine it is not the result of a misinterpretation of the document provided to ensure you are not denying an individual their ability to maintain employment and practice their religion.

Your timely response is urgently requested.

Thank you,
Kerry Goldstein

---

**From:** Kerry Goldstein
**Sent:** Tuesday, November 23, 2021 3:11 PM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Thanks, given the reality of the sincerely held beliefs are also religious I am wondering where you found the documentation to be lacking so I can provide more clarity. I understand you are using documentation provided where I did my best to answer the original questions I was given.. My thought is since you are evaluating a human and not a document, we can engage in an inquiry so I can provide the details you may find to be lacking.

I would assume that at minimum we must be on the same page that the beliefs I listed are religious in nature, leading me to think you find doubt in the sincerity as to if I use those foundations to make decisions in my life in other contexts. If that is the limitation I can provide an extraordinarily long list of areas through which those beliefs impact.

If for some reason you are of the opinion that many of the (often Jewish) beliefs are not of a religious nature or I failed to draw a clear enough connection to how that guides my morality and connection to G-d then I can list that out in more detail.

If there is a third area here where I have failed to provide information that in your opinion goes into the legal framework for what is considered a Religious belief please let me know as it is this area which could be overlooked.

I attempted to provide an applicable foundation of my religious beliefs and how those interact with the world as it relates to the available COVID vaccines and mandate. Please let me know where I can provide more explanation.

Thanks,
Kerry Goldstein

---

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Tuesday, November 23, 2021 2:50 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)


Hi Kerry,

Thank you for reaching out. We have carefully evaluated all of the detailed information you provided to us in support of your religious exemption request to determine how your stated belief/practice/observance guided your COVID-19 vaccination decision and how you implement your stated belief/practice/observance in your daily life and decision making. This information was then used to determine whether there exists a sincerely

held religious belief, as defined by federal and/or applicable state law, that warrants exemption from the Company's vaccination requirement. Based on the detailed information provided, we determined that the stated religious belief/practice/observance does not rise to level of a sincerely held religious belief warranting exemption from the COVID-19 vaccination. requirement.

Thank you,

Workplace Accommodation Team

Ref:MSG4656402_TFmtbLmYboGhHQmIOphk

 Gmail

**Kerry Goldstein <goldstein.kerry@gmail.com>**

---

## FW: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

**Kerry Goldstein** <Kerry.Goldstein@trilliumchp.com>
To: Kerry Goldstein <goldstein.kerry@gmail.com>

Thu, Dec 2, 2021 at 9:03 AM

---

**From:** Kerry Goldstein
**Sent:** Thursday, December 2, 2021 9:03 AM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

1 slight edit to the below.

---

**From:** Kerry Goldstein
**Sent:** Thursday, December 2, 2021 8:53 AM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Thanks for the reply.

Regarding the 11/23/21, not being received by the team.. I am not sure what to say other than ServiceNow was on the thread and the message was in the ticket. I don't know what happens behind the scene to explain how that would mean the team did not receive it. However, it may be worth noting that if this happened here it may be happening with other individuals where they have sent a message and that message has no reply and the team did not receive it.

I would like you to provide more detail as to if your denial is based on that you believe I don't hold what you would classify as religious views or if the issue is that you don't feel I am sincere.

    a. As you can imagine both realms 1) my religious views 2) how this may be communicated to convince you of sincerity are very ambiguous without having a more clear sense of where you find issue with what I have already communicated. Please also include where you do find issue, potentially why or what kind of items you look for..

**Example**:

1. **Religious**: The religious views I hold applicable to my argument I primarily placed in a very clear table and included information about from where those views are from and how they are personalized and applicable. I don't think you would argue those views are not religious in nature. So, here I am a bit lost.

Do you need more discussion on how those views are part of my perspective on how I connect to G-d or do you want to know more about my religious views in general..?

2. **Sincerity**: My religious views laid out in the paper and the table make a few points and I will list a simple breakdown here so my question can be more clear:

   a. A creator exists
   b. I connect to the creator through a combination of adopted perspectives but foundationally many of them rest from within Judaism.
   c. Part of what you do in the world is to get closer to G-d and to repair the world (which I can go into more detail has to do with an internal and external representation of the Sefirot and connecting those emanations back together → Luria.)

      i. Side point → my sons middle name is Chesed and my prior boss when asked what she could paint for him I said the Tree of Life with the Sefirot. The picture is attached and Chesed is on the right side in the middle (white/yellow color).

   d. You do that with your brain/body/soul
   e. It is our duty to protect that brain body and spirit to bring those back together (as laid out in the table)
   f. No idol or person can stand in the position of G-d to remove your individual connection and judgement regarding your connection to G-d and completing the above (as laid out in table)
   g. For myself protecting myself is part of a risk and reward and in this case the long and short term nature of the decision played a role
   h. I then showed some of the information I have collected with 17 citations showing that I don't take that religious obligation lightly and am sincere in this effort

      i. What additional information are you looking for here?

      ii. Would it help if I provide other examples of taking care of and protecting my mind and body?

      iii. Do you want other examples of activities I do of a religious nature to establish my religious views cover more areas than mitzvot/Sefirot, Teshuvah and protection of the mind/body/soul

      iv. Do you want more details into my religious views on some aspect of the above?

Thanks,

Kerry Goldstein

---

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Thursday, December 2, 2021 7:36 AM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Hi Kerry,

Thank you for your emails. We apologize for the delay, as the Workplace Accommodation Team was not included on your email dated 11/23/2021.

Regarding the appeal process, if you would like to submit additional information for review on appeal, please do so by "replying all" to this email and including or attaching any additional information **by the close of business on 12/6/2021**. Selecting "reply all" will ensure that your response reaches the Workplace Accommodation Team. Any additional information will be provided to HR Workplace Accommodation Leadership for review as part of our appeal process. If no additional information is provided, we will escalate the matter to HR Workplace Accommodation Leadership for review with the information already provided.

Finally, because this matter has been closed, a separate matter, HR00090810, is being opened to process your appeal.

Thank you,

Workplace Accommodation Team


Ref:MSG4897329_oxoYHaZrUmMdErmymbLQ

This transmission (including any attachments) may contain confidential information, privileged material (including material protected by the solicitor-client or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.(*cd:20130808)

**From:**              Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>
**Sent:**              Thursday, December 2, 2021 9:52 AM
**To:**                ServiceNow; Dawn M. Atkin; Kim Duerst
**Cc:**                Andrea L. Carlson-Kerr; Victoria Mann
**Subject:**           RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

A point of clarification here as I am unsure how to interpret the second half of your message.

     '..These emails, along with the resubmitted Rexemption document and picture attached to the 10:54AM CST email are being escalated to HR Workplace Accommodations Leadership for review as part of the appeal process.'

I submitted some clarifying questions, and not information I intended to meet the deadline of Monday to provide more information.

Is it correct to believe that I will receive a response to my inquiry prior to the deadline with then a reasonable amount of additional time to provide the clarified request?

Similarly, if the response to the those questions is after the deadline my assumption would be that it is extended to provide a reasonable amount of time should HR Leadership decide they could use more clarification, along with providing details requested in my email.

---

**From:** Kerry Goldstein
**Sent:** Thursday, December 2, 2021 9:34 AM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

I appreciate you looking into it. Please notice in the thread attached and what is posted below that my reply (3:11PM) with the inquiry happened after the message (2:50PM) you included in your attachment. I do suspect there is a system or process issue happening here that could impacting other people.
_____
**From:** Kerry Goldstein
**Sent:** Tuesday, November 23, 2021 3:11 PM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Thanks, given the reality of the sincerely held beliefs are also religious I am wondering where you found the documentation to be lacking so I can provide more clarity. I understand you are using documentation provided where I did my best to answer the original questions I was given.. My thought is since you are evaluating a human and not a document, we can engage in an inquiry so I can provide the details you may find to be lacking.

I would assume that at minimum we must be on the same page that the beliefs I listed are religious in nature, leading me to think you find doubt in the sincerity as to if I use those foundations to make decisions in my life in other contexts. If that is the limitation I can provide an extraordinarily long list of areas through which those beliefs impact.

If for some reason you are of the opinion that many of the (often Jewish) beliefs are not of a religious nature or I failed to draw a clear enough connection to how that guides my morality and connection to G-d then I can list that out in more detail.

If there is a third area here where I have failed to provide information that in your opinion goes into the legal framework for what is considered a Religious belief please let me know as it is this area which could be overlooked.

I attempted to provide an applicable foundation of my religious beliefs and how those interact with the world as it relates to the available COVID vaccines and mandate. Please let me know where I can provide more explanation.

Thanks,
Kerry Goldstein

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Tuesday, November 23, 2021 2:50 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)


Hi Kerry,

Thank you for reaching out. We have carefully evaluated all of the detailed information you provided to us in support of your religious exemption request to determine how your stated belief/practice/observance guided your COVID-19 vaccination decision and how you implement your stated belief/practice/observance in your daily life and decision making. This information was then used to determine whether there exists a sincerely held religious belief, as defined by federal and/or applicable state law, that warrants exemption from the Company's vaccination requirement. Based on the detailed information provided, we determined that the stated religious belief/practice/observance does not rise to level of a sincerely held religious belief warranting exemption from the COVID-19 vaccination. requirement.

Thank you,

Workplace Accommodation Team


Ref:MSG4656402_TFmtbLmYboGhHQmIOphk

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Thursday, December 2, 2021 9:26 AM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)


Hi Kerry,

Thank you for your email. We rechecked our records and did receive your 11/23/2021 email. We responded the same day. Please see the attached.

We have received the additional information submitted at 10:54AM CST as well as the email sent 11:05AM CST indicating that there is a slight edit to the 10:54AM CST email.

These emails, along with the resubmitted Rexemption document and picture attached to the 10:54AM CST email are being escalated to HR Workplace Accommodations Leadership for review as part of the appeal process.

Thank you,

Workplace Accommodation Team

Ref:MSG4904247_ixdlBHWnFBabqxxxPfYH

| | |
|---|---|
| **From:** | ServiceNow <cncservicenow@CENTENE.COM> |
| **Sent:** | Friday, December 3, 2021 6:14 AM |
| **To:** | Kerry Goldstein; Erin Fowler |
| **Subject:** | HR Request HR00090810 |

Hello Kerry Goldstein (CN131872),

Thank you for your HR service inquiry. This message contains updated information for you to review.

Customer Communication from ADA:
Hi Kerry,

Thank you for your questions submitted yesterday. You are welcome to provide information on any of the topics posed in your questions. Your responses will be reviewed and considered as part of the appeal process.

Thank you,
Workplace Accommodation Team

Link to ticket: HR00090810

**

Thank You,

Your HR Partners

1-833-GoAskHR (1-833-462-7547)

*If the information provided here is inconsistent with policies or plan documents, the policies or plan documents will govern.*

Ref:MSG4940053_UtbicouHDfOmlLIhnAKe

 Gmail

**Kerry Goldstein <goldstein.kerry@gmail.com>**

## FW: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

**Kerry Goldstein** <Kerry.Goldstein@trilliumchp.com>                                          Fri, Dec 3, 2021 at 10:49 AM
To: Kerry Goldstein <goldstein.kerry@gmail.com>

---

**From:** Kerry Goldstein
**Sent:** Friday, December 3, 2021 8:49 AM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

Hi Workplace Accommodations Team,

I am noting a response here (and attached) – placed in the other ticket

> *'Thank you for your questions submitted yesterday. You are welcome to provide information on any of the topics posed in your questions. Your responses will be reviewed and considered as part of the appeal process.'*

This reply does not indicate if (included in attachments)

1. The questions requesting clarification will be answered (asked on 11/23 and additionally on 12/2)
2. If the 4 process questions from 12/1 will be answered
3. Via the questions from 12/2 if an answer to any of the above will be provided and how that would impact the timeline

Please see the attachments for the full questions

Your clear responses to the above can help me to follow the process you have laid out and provide information to help any judgement be free from misinterpretation or lack of information.

I am keeping everyone on this thread as I also believe everyone as either direct leadership or local HR representatives has a stake in ensuring the process is free from harassment and to have this information to ensure that any issue or process concern is not a local or enterprise concern from a legal or ethical standpoint.

Thanks,

Kerry Goldstein

**From:** Kerry Goldstein
**Sent:** Thursday, December 2, 2021 9:52 AM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)


A point of clarification here as I am unsure how to interpret the second half of your message.

> '..These emails, along with the resubmitted Rexemption document and picture attached to the 10:54AM CST email are being escalated to HR Workplace Accommodations Leadership for review as part of the appeal process.'


I submitted some clarifying questions, and not information I intended to meet the deadline of Monday to provide more information.


Is it correct to believe that I will receive a response to my inquiry prior to the deadline with then a reasonable amount of additional time to provide the clarified request?


Similarly, if the response to the those questions is after the deadline my assumption would be that it is extended to provide a reasonable amount of time should HR Leadership decide they could use more clarification, along with providing details requested in my email.

---

**From:** Kerry Goldstein
**Sent:** Thursday, December 2, 2021 9:34 AM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)


I appreciate you looking into it. Please notice in the thread attached and what is posted below that my reply (3:11PM) with the inquiry happened after the message (2:50PM) you included in your attachment. I do suspect there is a system or process issue happening here that could impacting other people.

_____

**From:** Kerry Goldstein
**Sent:** Tuesday, November 23, 2021 3:11 PM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)


Thanks, given the reality of the sincerely held beliefs are also religious I am wondering where you found the documentation to be lacking so I can provide more clarity. I understand you are using documentation provided where I did my best to answer the original questions I was given.. My thought is since you are evaluating a human and not a document, we can engage in an inquiry so I can provide the details you may find to be lacking.

I would assume that at minimum we must be on the same page that the beliefs I listed are religious in nature, leading me to think you find doubt in the sincerity as to if I use those foundations to make decisions in my life in other contexts. If that is the limitation I can provide an extraordinarily long list of areas through which those beliefs impact.

If for some reason you are of the opinion that many of the (often Jewish) beliefs are not of a religious nature or I failed to draw a clear enough connection to how that guides my morality and connection to G-d then I can list that out in more detail.

If there is a third area here where I have failed to provide information that in your opinion goes into the legal framework for what is considered a Religious belief please let me know as it is this area which could be overlooked.

I attempted to provide an applicable foundation of my religious beliefs and how those interact with the world as it relates to the available COVID vaccines and mandate. Please let me know where I can provide more explanation.

Thanks,

Kerry Goldstein

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Tuesday, November 23, 2021 2:50 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.COM>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Hi Kerry,

Thank you for reaching out. We have carefully evaluated all of the detailed information you provided to us in support of your religious exemption request to determine how your stated belief/practice/observance guided your COVID-19 vaccination decision and how you implement your stated belief/practice/observance in your daily life and decision making. This information was then used to determine whether there exists a sincerely held religious belief, as defined by federal and/or applicable state law, that warrants exemption from the Company's vaccination requirement. Based on the detailed information provided, we determined that the stated religious belief/practice/observance does not rise to level of a sincerely held religious belief warranting exemption from the COVID-19 vaccination. requirement.

Thank you,

Workplace Accommodation Team

Ref:MSG4656402_TFmtbLmYboGhHQmIOphk

---

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Thursday, December 2, 2021 9:26 AM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>

Cc: Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

Hi Kerry,

Thank you for your email. We rechecked our records and did receive your 11/23/2021 email. We responded the same day. Please see the attached.

We have received the additional information submitted at 10:54AM CST as well as the email sent 11:05AM CST indicating that there is a slight edit to the 10:54AM CST email.

These emails, along with the resubmitted Rexemption document and picture attached to the 10:54AM CST email are being escalated to HR Workplace Accommodations Leadership for review as part of the appeal process.


Thank you,

Workplace Accommodation Team


Ref:MSG4904247_ixdlBHWnFBabqxxxPfYH

This transmission (including any attachments) may contain confidential information, privileged material (including material protected by the solicitor-client or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.(*cd:20130808)


---------- Forwarded message ----------
From: ServiceNow <cncservicenow@centene.com>
To: Kerry Goldstein <Kerry.Goldstein@trilliumchp.com>, Erin Fowler <Erin.Fowler@centene.com>
Cc:
Bcc:
Date: Fri, 3 Dec 2021 14:13:56 +0000
Subject: HR Request HR00090810

Hello Kerry Goldstein (CN131872),

Thank you for your HR service inquiry. This message contains updated information for you to review.

Customer Communication from ADA:
Hi Kerry,

Thank you for your questions submitted yesterday. You are welcome to provide information on any of the topics posed in your questions. Your responses will be reviewed and considered as part of the appeal process.

Thank you,
Workplace Accommodation Team

Link to ticket: HR00090810

**

Thank You,

Your HR Partners

1-833-GoAskHR (1-833-462-7547)

*If the information provided here is inconsistent with policies or plan documents, the policies or plan documents will govern.*

Ref:MSG4940053_UtbicouHDfOmlLIhnAKe

---------- Forwarded message ----------
From: Kerry Goldstein <Kerry.Goldstein@trilliumchp.com>
To: ServiceNow <cncservicenow@centene.com>, "Dawn M. Atkin" <Dawn.M.Atkin@trilliumchp.com>, Kim Duerst <kduerst@trilliumchp.com>
Cc: "Andrea L. Carlson-Kerr" <Andrea.L.CarlsonKerr@centene.com>, Victoria Mann <Victoria.Mann@centene.com>
Bcc:
Date: Wed, 1 Dec 2021 22:39:42 +0000
Subject: RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

I would like to please follow up on my previous note, having not received a reply.

I am wondering what the timeline here is regarding an appropriate reply and given the lack of clear and timely communication.

Additionally, I would like to discuss the following questions:

1. Does Centene review these internally or are they contracted to a third party? If so who?
2. Is there an audit process regarding how these are processed
3. What does an appeal process look like and is there one?
4. I would like to see my file, the accompanying documentation and any specific timestamps or comments on it regarding the review

I am finding this lacking both sincerity and transparency. In an effort to provide transparency I have attached my reasons (submitted 10/8) of my sincerely held religiously based objections. I have not been contacted, and have received only the ambiguous information without specific as to why this is denied, with no accompanying inquiry or clarification requested.

It is unclear if the denial is the result of suspected sincerity (although I think for those that know me in reading will find it matches with and explains many of my choices), deciding it is not meeting standard of religion or some other reason.

All I know at this point is I have submitted information providing what I believe is to be the requested information to describe my religious objection. I have received a denied notice but there are only very specific reasons this can be denied. Those denial reasons have not been communicated, nor have I been given a route to provide additional information to describe my position or clarify a misunderstanding. My general assumption about how any process like this would take place is that the documentation is assumed to be sincere and any investigation must be carefully documented (which is why I am hoping request #4 can be helpful).

I am not requesting admission into some special program where my application is evaluated for acceptance. I am telling you about why I am unable to do what the company has requested because it conflicts with my protected religion. A denial is meaningless. You only have certain criteria to not reach a stage of looking for accommodation.  Please communicate those reasons so we can address them.

*For everyone on this thread,* I would ask for your support in bringing transparency to this process, as I believe we are all called to do. I do not believe that just because a potential third party has provided an ambiguous comment regarding a denial it removes any obligation to ensure that a legal, moral and timely process proceeds. This process had brought to light some severe flaws within the system, and while I would like answers for myself I also see an opportunity to reduce liability that this communication represents for our broader team members and create a transparent, moral, and remove

opportunities for potential harassment. I also want to clarify for anyone on this thread that what you are seeing here in this process is not the result of any mandate or company hardship, as that would be addressed in the accommodation stage of the request. Rather, you are seeing the result of some process or policy which is deliberately choosing this level of opaqueness and ambiguity to deny individuals beliefs,  practices, and religious observance, through claim of an undetermined reason. Furthermore if that reason is clearly communicated where is the step to determine it is not the result of a misinterpretation of the document provided to ensure you are not denying an individual their ability to maintain employment and practice their religion.


Your timely response is urgently requested.


Thank you,

Kerry Goldstein

---

**From:** Kerry Goldstein
**Sent:** Tuesday, November 23, 2021 3:11 PM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)


Thanks, given the reality of the sincerely held beliefs are also religious I am wondering where you found the documentation to be lacking so I can provide more clarity. I understand you are using documentation provided where I did my best to answer the original questions I was given.. My thought is since you are evaluating a human and not a document, we can engage in an inquiry so I can provide the details you may find to be lacking.


I would assume that at minimum we must be on the same page that the beliefs I listed are religious in nature, leading me to think you find doubt in the sincerity as to if I use those foundations to make decisions in my life in other contexts. If that is the limitation I can provide an extraordinarily long list of areas through which those beliefs impact.


If for some reason you are of the opinion that many of the (often Jewish) beliefs are not of a religious nature or I failed to draw a clear enough connection to how that guides my morality and connection to G-d then I can list that out in more detail.


If there is a third area here where I have failed to provide information that in your opinion goes into the legal framework for what is considered a Religious belief please let me know as it is this area which could be overlooked.


I attempted to provide an applicable foundation of my religious beliefs and how those interact with the world as it relates to the available COVID vaccines and mandate. Please let me know where I can provide more explanation.


Thanks,

Kerry Goldstein

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Tuesday, November 23, 2021 2:50 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)


Hi Kerry,

Thank you for reaching out. We have carefully evaluated all of the detailed information you provided to us in support of your religious exemption request to determine how your stated belief/practice/observance guided your COVID-19 vaccination decision and how you implement your stated belief/practice/observance in your daily life and decision making. This information was then used to determine whether there exists a sincerely held religious belief, as defined by federal and/or applicable state law, that warrants exemption from the Company's vaccination requirement. Based on the detailed information provided, we determined that the stated religious belief/practice/observance does not rise to level of a sincerely held religious belief warranting exemption from the COVID-19 vaccination. requirement.

Thank you,

Workplace Accommodation Team


Ref:MSG4656402_TFmtbLmYboGhHQmIOphk


---------- Forwarded message ----------
From: Kerry Goldstein <Kerry.Goldstein@trilliumchp.com>
To: ServiceNow <cncservicenow@centene.com>, "Dawn M. Atkin" <Dawn.M.Atkin@trilliumchp.com>, Kim Duerst <kduerst@trilliumchp.com>
Cc: "Andrea L. Carlson-Kerr" <Andrea.L.CarlsonKerr@centene.com>, Victoria Mann <Victoria.Mann@centene.com>
Bcc:
Date: Thu, 2 Dec 2021 17:52:04 +0000
Subject: RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

A point of clarification here as I am unsure how to interpret the second half of your message.

  '..These emails, along with the resubmitted Rexemption document and picture attached to the 10:54AM CST email are being escalated to HR Workplace Accommodations Leadership for review as part of the appeal process.'


I submitted some clarifying questions, and not information I intended to meet the deadline of Monday to provide more information.


Is it correct to believe that I will receive a response to my inquiry prior to the deadline with then a reasonable amount of additional time to provide the clarified request?


Similarly, if the response to the those questions is after the deadline my assumption would be that it is extended to provide a reasonable amount of time should HR Leadership decide they could use more clarification, along with providing details requested in my email.

**From:** Kerry Goldstein
**Sent:** Thursday, December 2, 2021 9:34 AM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)


I appreciate you looking into it. Please notice in the thread attached and what is posted below that my reply (3:11PM) with the inquiry happened after the message (2:50PM) you included in your attachment. I do suspect there is a system or process issue happening here that could impacting other people.

_____

**From:** Kerry Goldstein
**Sent:** Tuesday, November 23, 2021 3:11 PM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)


Thanks, given the reality of the sincerely held beliefs are also religious I am wondering where you found the documentation to be lacking so I can provide more clarity. I understand you are using documentation provided where I did my best to answer the original questions I was given.. My thought is since you are evaluating a human and not a document, we can engage in an inquiry so I can provide the details you may find to be lacking.


I would assume that at minimum we must be on the same page that the beliefs I listed are religious in nature, leading me to think you find doubt in the sincerity as to if I use those foundations to make decisions in my life in other contexts. If that is the limitation I can provide an extraordinarily long list of areas through which those beliefs impact.


If for some reason you are of the opinion that many of the (often Jewish) beliefs are not of a religious nature or I failed to draw a clear enough connection to how that guides my morality and connection to G-d then I can list that out in more detail.


If there is a third area here where I have failed to provide information that in your opinion goes into the legal framework for what is considered a Religious belief please let me know as it is this area which could be overlooked.


I attempted to provide an applicable foundation of my religious beliefs and how those interact with the world as it relates to the available COVID vaccines and mandate. Please let me know where I can provide more explanation.


Thanks,

Kerry Goldstein


**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Tuesday, November 23, 2021 2:50 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Hi Kerry,

Thank you for reaching out. We have carefully evaluated all of the detailed information you provided to us in support of your religious exemption request to determine how your stated belief/practice/observance guided your COVID-19 vaccination decision and how you implement your stated belief/practice/observance in your daily life and decision making. This information was then used to determine whether there exists a sincerely held religious belief, as defined by federal and/or applicable state law, that warrants exemption from the Company's vaccination requirement. Based on the detailed information provided, we determined that the stated religious belief/practice/observance does not rise to level of a sincerely held religious belief warranting exemption from the COVID-19 vaccination. requirement.

Thank you,

Workplace Accommodation Team

Ref:MSG4656402_TFmtbLmYboGhHQmIOphk

---

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Thursday, December 2, 2021 9:26 AM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

Hi Kerry,

Thank you for your email. We rechecked our records and did receive your 11/23/2021 email. We responded the same day. Please see the attached.

We have received the additional information submitted at 10:54AM CST as well as the email sent 11:05AM CST indicating that there is a slight edit to the 10:54AM CST email.

These emails, along with the resubmitted Rexemption document and picture attached to the 10:54AM CST email are being escalated to HR Workplace Accommodations Leadership for review as part of the appeal process.

Thank you,

Workplace Accommodation Team

Ref:MSG4904247_ixdlBHWnFBabqxxxPfYH

---------- Forwarded message ----------
From: Kerry Goldstein <Kerry.Goldstein@trilliumchp.com>
To: ServiceNow <cncservicenow@centene.com>, "Dawn M. Atkin" <Dawn.M.Atkin@trilliumchp.com>, Kim Duerst <kduerst@trilliumchp.com>
Cc: "Andrea L. Carlson-Kerr" <Andrea.L.CarlsonKerr@centene.com>, Victoria Mann <Victoria.Mann@centene.com>
Bcc:

Date: Thu, 2 Dec 2021 17:52:04 +0000
Subject: RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

A point of clarification here as I am unsure how to interpret the second half of your message.

‘..These emails, along with the resubmitted Rexemption document and picture attached to the 10:54AM CST email are being escalated to HR Workplace Accommodations Leadership for review as part of the appeal process.’

I submitted some clarifying questions, and not information I intended to meet the deadline of Monday to provide more information.

Is it correct to believe that I will receive a response to my inquiry prior to the deadline with then a reasonable amount of additional time to provide the clarified request?

Similarly, if the response to the those questions is after the deadline my assumption would be that it is extended to provide a reasonable amount of time should HR Leadership decide they could use more clarification, along with providing details requested in my email.

---

**From:** Kerry Goldstein
**Sent:** Thursday, December 2, 2021 9:34 AM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

I appreciate you looking into it. Please notice in the thread attached and what is posted below that my reply (3:11PM) with the inquiry happened after the message (2:50PM) you included in your attachment. I do suspect there is a system or process issue happening here that could impacting other people.

_____

**From:** Kerry Goldstein
**Sent:** Tuesday, November 23, 2021 3:11 PM
**To:** cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Thanks, given the reality of the sincerely held beliefs are also religious I am wondering where you found the documentation to be lacking so I can provide more clarity. I understand you are using documentation provided where I did my best to answer the original questions I was given.. My thought is since you are evaluating a human and not a document, we can engage in an inquiry so I can provide the details you may find to be lacking.

I would assume that at minimum we must be on the same page that the beliefs I listed are religious in nature, leading me to think you find doubt in the sincerity as to if I use those foundations to make decisions in my life in other contexts. If that is the limitation I can provide an extraordinarily long list of areas through which those beliefs impact.

If for some reason you are of the opinion that many of the (often Jewish) beliefs are not of a religious nature or I failed to draw a clear enough connection to how that guides my morality and connection to G-d then I can list that out in more

detail.

If there is a third area here where I have failed to provide information that in your opinion goes into the legal framework for what is considered a Religious belief please let me know as it is this area which could be overlooked.

I attempted to provide an applicable foundation of my religious beliefs and how those interact with the world as it relates to the available COVID vaccines and mandate. Please let me know where I can provide more explanation.

Thanks,

Kerry Goldstein

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Tuesday, November 23, 2021 2:50 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Determination Follow Up - Kerry Goldstein (205299)

Hi Kerry,

Thank you for reaching out. We have carefully evaluated all of the detailed information you provided to us in support of your religious exemption request to determine how your stated belief/practice/observance guided your COVID-19 vaccination decision and how you implement your stated belief/practice/observance in your daily life and decision making. This information was then used to determine whether there exists a sincerely held religious belief, as defined by federal and/or applicable state law, that warrants exemption from the Company's vaccination requirement. Based on the detailed information provided, we determined that the stated religious belief/practice/observance does not rise to level of a sincerely held religious belief warranting exemption from the COVID-19 vaccination. requirement.

Thank you,

Workplace Accommodation Team

Ref:MSG4656402_TFmtbLmYboGhHQmIOphk

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Thursday, December 2, 2021 9:26 AM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299)

Hi Kerry,

Thank you for your email. We rechecked our records and did receive your 11/23/2021 email. We responded the same day. Please see the attached.

We have received the additional information submitted at 10:54AM CST as well as the email sent 11:05AM CST indicating that there is a slight edit to the 10:54AM CST email.

These emails, along with the resubmitted Rexemption document and picture attached to the 10:54AM CST email are being escalated to HR Workplace Accommodations Leadership for review as part of the appeal process.


Thank you,

Workplace Accommodation Team


Ref:MSG4904247_ixdlBHWnFBabqxxxPfYH

---

**5 attachments**

**HR Request HR00090810.eml**
10K

**Rexemption.docx**
25K

**RE: Religious Accommodation Determination Follow Up - Kerry Goldstein (205299).eml**
64K

**RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299).eml**
27K

**RE: Religious Accommodation Appeal Follow Up - Kerry Goldstein (205299).eml**
27K

**Kerry Goldstein**

| | |
|---|---|
| **From:** | ServiceNow |
| **Sent:** | Monday, December 6, 2021 1:01 PM |
| **To:** | Kerry Goldstein; Dawn M. Atkin; Kim Duerst |
| **Cc:** | Andrea L. Carlson-Kerr; Victoria Mann |
| **Subject:** | Religious Accommodation Follow Up - Kerry Goldstein (205299) |

Hi Kerry,

The email received this afternoon has been reviewed. We are happy to consider any additional information or documentation you would like to submit on appeal. Regarding the remainder of the questions posed, HR Workplace Accommodations Leadership has stated that no additional responses will be provided at this time.

If you would like to submit additional information or documentation, please do so **by the close of business on 12/8/2021**. If additional information/documentation is received, we will be sure to inform you of its receipt and will then forward it to HR Workplace Accommodations Leadership for review. If no additional information/documentation is received, HR Workplace Accommodations Leadership will complete the appeal review based on the information you've already provided.


Thank you,

Workplace Accommodation Team


Ref:MSG5028774_wAwvihdUMOvuqYhFWwXm

    Gmail

**Kerry Goldstein <goldstein.kerry@gmail.com>**

---

## FW: Religious Accommodation Follow Up - Kerry Goldstein (205299)

**Kerry Goldstein** <Kerry.Goldstein@trilliumchp.com>
To: Kerry Goldstein <goldstein.kerry@gmail.com>

Wed, Dec 8, 2021 at 12:41 PM

---

**From:** Kerry Goldstein
**Sent:** Wednesday, December 8, 2021 8:47 AM
**To:** ServiceNow <cncservicenow@CENTENE.COM>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** RE: Religious Accommodation Follow Up - Kerry Goldstein (205299)

Hi Workplace Accommodation Team,

I appreciate you replying.

The documentation I have provided includes sincerely held religious beliefs, along with how those beliefs are directly and sincerely applied to arrive at the conclusion where they conflict with taking any of the currently available COVID-19 vaccination products available.

Without further clarification you are asking me to spend an unreasonable amount of time to blindly provide additional information in any number of areas to an unknown level of detail and specificity beyond what has already been provided.

With that said, if you have any areas where you have more questions, want more detail in either interview or through written format I would be very happy to provide.

**In review I would ask the following:**

I talked to my lawyer to see if he had any idea of what you might be wanting as I am astonished not only in the initial denial but the refusal to have any type of inquiry or specificity in the request.

He suggested that using some Hebrew terms in the document may have made it more difficult for your team to follow my religious references and that as a result you may be more likely to make an error in failing to connect the religious nature of those concepts. Similarly, someone with a religious system more closely aligned with a reviewers knowledge or cursory search could be more obvious and familiar. Without the team eliciting questions this may put my religion at a disadvantage in this review process.  To that regard I am also concerned regarding a bias nature of this process which is why I am so willing to provide any additional information you request.

        With that possibility for error in mind I want to be prudent here and help connect some dots that may not be as obvious without inquiry

- Shemot and Dvarim references areas in the Torah (Shemot = Exodus and Dvarim = Deuteronomy)
- Mishneh Torah was written by Rambam / Maimonides who was one of the greatest commentators and organizers of Jewish law (very popular)

- My son Avi goes to a Chabad (short for the 3 Sephirot → Chochmah, Binah, Daat = Wisdom, Understanding/intuition, Knowledge) school named Maimonides
- Repairing the world through Sephirot: Sephirot basics as it interacts in my belief system
  - When the world was created in order for G-d to emanate into aspect we can understand their had to be a restriction
  - The restriction got broken down at a high level into sephirot (each sephirot has what you might call a emotional or psychological aspect, example Chesed = loving kindness as shown by Avraham).
  - We can have a general understanding of the different sephirot however for myself and within Jewish thought their is disagreement as to the level of understanding for Keter or even if Keter exists or should be considered a Sephirot (see Pardes Rimonim, Orchard of the Pomegranates by Moshe Cordovero)
    - Association to G-d: Often referred to as Ein-Sof meaning endless which has to do with a recognition of being unable to ever grasp or understand G-d which is where the roots of humans being unable to incorporate Keter likely originate
  - As part of repair of the world or mitzvot I see that as bringing back the sephirot (aspects) together into balance
  - Unique aspect for myself has to do with a connection between the Sephirot and body chakras (I am not yet convinced how direct the mapping is but my experience is there is a strong overlap)
    - The closest reference to my understanding of Chakras is via Donna Eden
    - Again here the mind and body and spirit are required for this experience and to be able to both discern and properly mix these aspects into the world
      - Not only just distancing but also guarding against harm is not only directed but is my direct responsibility (references provided in original document).
        - Another area this plays out for example is how I eat, almost no sugar or processed grains, fast multiple times during the year
      - Engagement in this process helps me to understand myself but also to connect closer to G-d (as combining Sephirot up through Keter (but never fully inclusive of) and perform part of my purpose in life.
        - I meditate for at least 30m each day with these concepts and actively throughout the day attempt to keep them in mind, say the Shema which helps with the attempting to keep in mind during the day (talks about all the times to think about it) and often engage with Tefillin (3 wraps on the bicep plus 7 on the arm = 10 sephirot)

I would ask that in this process you keep in mind that yourself or any review on your team is more likely to read into familiar religious references and their meaning along with the likely sincerity. Familiarity of beliefs and practices are easier to adopt for any reader. In some ways that concept is also the basis of most of our inclusivity and discrimination courses/policy. So, I ask that you consider adopting practices that can help in understanding where I am coming from rather than dismissing either the sincerity and/or religious nature so as to more likely judge on even ground.

Thanks,

Kerry Goldstein

**Kerry Goldstein**, MA, MBA, CPHQ, PSM, PSPO

Population Health and Clinical Operations |Operations Manager

Oregon Market | Health Net and Trillium Community Health Plan

Mobile: 503-314-8770

*Transforming the health of the community, one person at a time*

| | | | |
|---|---|---|---|
| Trillium Community Health Plan | Trillium ADVANTAGE | Health Net MEDICARE PROGRAMS | Health Net |
| Trilliumohp.com | TrilliumAdvantage.com | or.healthnetadvantage.com | HealthNetOregon.com |

---

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Monday, December 6, 2021 1:01 PM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Follow Up - Kerry Goldstein (205299)

Hi Kerry,

The email received this afternoon has been reviewed. We are happy to consider any additional information or documentation you would like to submit on appeal. Regarding the remainder of the questions posed, HR Workplace Accommodations Leadership has stated that no additional responses will be provided at this time.

If you would like to submit additional information or documentation, please do so **by the close of business on 12/8/2021**. If additional information/documentation is received, we will be sure to inform you of its receipt and will then forward it to HR Workplace Accommodations Leadership for review. If no additional information/documentation is received, HR Workplace Accommodations Leadership will complete the appeal review based on the information you've already provided.

Thank you,

Workplace Accommodation Team

Ref:MSG5028774_wAwvihdUMOvuqYhFWwXm

This transmission (including any attachments) may contain confidential information, privileged material (including material protected by the solicitor-client or other applicable privileges), or constitute non-public information. Any use of this information by anyone other than the intended recipient is prohibited. If you have received this transmission in error, please immediately reply to the sender and delete this information from your system. Use, dissemination, distribution, or reproduction of this transmission by unintended recipients is not authorized and may be unlawful.(*cd:20130808)

# EXHIBIT "D"

## Kerry Goldstein

| | |
|---|---|
| **From:** | Kerry Goldstein |
| **Sent:** | Thursday, December 16, 2021 8:50 AM |
| **To:** | ServiceNow; Dawn M. Atkin; Kim Duerst |
| **Cc:** | Andrea L. Carlson-Kerr; Victoria Mann |
| **Subject:** | RE: Religious Accommodation Appeal Determination - Kerry Goldstein (205299) |

I appreciate that you completed a review. I believe your review process, likely your criteria and your appeal process are faulty, discriminatory and illegal.
I believe in Centene's work and very much hope for their benefit in not proceeding with likely mass religious discriminatory practices and upholding their mission some significant changes are made.

---

**From:** ServiceNow <cncservicenow@CENTENE.COM>
**Sent:** Thursday, December 16, 2021 8:40 AM
**To:** Kerry Goldstein <Kerry.Goldstein@TrilliumCHP.com>; Dawn M. Atkin <Dawn.M.Atkin@TrilliumCHP.com>; Kim Duerst <kduerst@trilliumchp.com>
**Cc:** Andrea L. Carlson-Kerr <Andrea.L.CarlsonKerr@CENTENE.com>; Victoria Mann <Victoria.Mann@centene.com>
**Subject:** Religious Accommodation Appeal Determination - Kerry Goldstein (205299)

Dear Kerry,

Thank you for reaching out with your concerns about the recent denial of your request for exemption from the Company's proof of vaccination requirement based upon a sincerely held religious belief.

**Appeal Review**
As part of the accommodation appeal process, HR Workplace Accommodations leadership has reviewed the matter, including your original request with any supporting documents, any new information you submitted with this appeal, and the original determination and analysis.  Upon review, the prior decision is upheld as the original determination was appropriate.

**Your Next Step:  Choice to Make**
1. If you choose to remain unvaccinated, your employment will be reviewed for further disciplinary action, including termination in accordance with the timelines established by the company as communicated.
2. Alternatively, you may choose to provide proof of vaccination. Given that it may take 3-5 weeks to become fully vaccinated from the date of the first COVID-19 vaccination shot, you should make immediate plans to receive a vaccination.
   - Should you choose to become vaccinated, you will be compensated for time taken off work to receive your vaccination(s).  Please schedule time off with your People Leader and account for this time using the "COVID-Vaccine" pay code.

**Appeal Determination is Final**
This appeal determination is final.  Thank you for the opportunity to review and respond to your concerns.

Sincerely,

The Workplace Accommodations Team

# EXHIBIT "E"

**Kerry Goldstein**

| | |
|---|---|
| **From:** | HR Communications <noreply@communication.wellcare.com> |
| **Sent:** | Wednesday, January 5, 2022 12:31 PM |
| **To:** | Kerry Goldstein |
| **Cc:** | Kim Duerst |
| **Subject:** | Proof of Vaccination Not Submitted |



Dear Kerry Goldstein,

Earlier this year, we initiated the new policy requiring proof of vaccination as a general condition of employment, as we are deeply committed to protecting all our communities, employees, and those who are unable to receive a vaccine due to health or age restrictions, especially young children.

**Your proof of vaccination deadline was December 31, 2021. You did not submit proof of COVID-19 vaccination or obtain an approved exemption** (or an exemption has expired or is expiring soon) **by the deadline and are in violation of Centene's COVID-19 Vaccination Policy.** Your last day worked will be January 27, 2022, and your pay through and termination date will be February 4, 2022. As communicated, all Centene employees are required to demonstrate proof of full vaccination as a general condition of employment. Employees who fail to submit proof of full vaccination are subject to disciplinary action, up to and including termination.

Upon your termination a Termination Notice will be emailed to your personal email address in Workday with additional information about how to return any company property or documents in your possession as well as information on your benefits and other matters relating to the end of your employment.

# EXHIBIT "F"



**CHRISTINA E. STEPHENSON**
Labor Commissioner

March 3, 2023

KERRY GOLDSTEIN
C/O PACIFIC JUSTICE INSTITUTE
PO BOX 5229
SALEM, OR 97304

RE:   Complainant:   Kerry Goldstein
      Respondent:   Centene Corporation
      Case #:   EEEMRG220614-10913
      EEOC #:   38D-2022-00591

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: March 3, 2023

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney

   

# EXHIBIT "G"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days    Add Days    Workdays    Add Workdays    Weekday    Week №

From **Friday, March 3, 2023**
Added 90 days

## Result: Thursday, June 1, 2023

### Calendar showing period from March 3, 2023 to June 1, 2023

| March 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 28 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| April 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 30 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

| May 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 31 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

| June 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 1 day added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

☐ = Start date (Mar 3, 2023)    ☐ = Final result date (Jun 1, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.